# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| WELL GO USA, INC.<br>A TEXAS CORPORATION, | § § § | |
| PLAINTIFF, | § § | |
| VS. | § § | C.A. NO.: 4:12-cv-00963 |
| UNKNOWN PARTICIPANTS IN<br>FILESHARING SWARM IDENTIFIED BY<br>HASH: B7FEC872874D0CC9B1372ECE-<br>5ED07AD7420A3BBB | § § § § § § | |
| DEFENDANTS. | § | |

## MOTION FOR LEAVE TO IDENTIFY DEFENDANTS

Plaintiff, by counsel, respectfully moves this Court for leave to conduct discovery on the nonparty internet service providers listed in Exhibit A. This discovery shall be limited to the identifying information of service providers' customers whose accounts were witnessed as being involved in the joint acts of copyright infringement detailed in Plaintiff's Complaint. Without this information, Plaintiff has no means to pursue its infringement claims or otherwise seek redress for the unlawful acts at issue.

### I. BACKGROUND ON DISCOVERY IN BITTORRENT CASES

The nature of the technology by which Defendants in this case infringed Plaintiff's rights is unquestionably revolutionary and it therefore presents certain unique issues during litigation. The most distinguishing and legally significant aspect of BitTorrent technology is that it was designed to be used by a *group* of people working together, with every person in the group downloading or uploading pieces of the file to or from the other group members simultaneously. Previous peer-to-peer filesharing technologies, such as Napster, Aimster and Grokster, could

only support one-to-one connections, with a single uploader providing digital media to a single downloader. The speed such file transfers were therefore limited by the maximum bandwidth that an uploader's connection could support.

With BitTorrent, there is no such limitation because the media is being downloaded from numerous other people simultaneously. This is precisely what makes BitTorrent filesharing so popular: the exceptionally high-speed transfers. For example, a high-definition full-length feature film may be downloaded in its entirety in about ten minutes via BitTorrent.

    a. **Copyright Act Subpoenas Were Designed for Plaintiffs to Identify Infringers Prior to Filing Suit**

Between August of 2011 and March of 2012, at least nineteen copyright infringement cases were filed here in the Southern District against John Doe defendants accused of infringing copyright via the internet. Many of these cases were dismissed before ever going to trial. This is largely because these grievances can easily be resolved through inexpensive settlement. Such settlement discussions are quite standard when seeking redress for tortious conduct and these discussions often take place prior to filing suit. This entirely obviates any burden on the courts whatsoever. But these discussions are impossible when the wrongdoers are unknown.

It is for this very reason that the Copyright Act contains its own special subpoena provision for the specific purpose of identifying alleged copyright infringers without the need of filing a federal lawsuit.[3] This was integrated into the Digital Millennium Copyright Act ("DMCA") at the request of entertainment companies in exchange for the immunities from liability that internet service providers demanded for the superabundant infringing activities of their customers. This subpoena provision was intended to put copyright holders on equal footing with victims of more traditional torts, in which the identity of the wrongdoer is readily

---

[3] 17 USC § 512(h)

ascertainable. With intentional and unintentional torts alike, the opportunity to confront a tortfeasor enables parties to resolve disputes themselves and demotes the thought of litigation to an option of last resort. This not only alleviates the burden on the courts – it comports with public policy and simple human nature.

    b. **<u>Internet Service Providers Now Fight Copyright Act Subpoenas and Require Plaintiffs to Sue In Lieu of Alternate Resolution</u>**

Whether a subpoena is served pursuant to the Copyright Act[4] or Rule 45 of the Federal Rules of Civil Procedure, all large internet service providers in the United states now refuse to comply with *any* subpoena seeking the identity of an alleged copyright infringer unless that subpoena is accompanied by a court order. Indeed, if Plaintiff's Motion is granted, Plaintiff anticipates that certain subpoenaed internet service providers will still object to the Court's own Order, paradoxically expending far more time and resources than needed to simply comply. *See* Exhibit D, Objections from AT&T and Verizon to Court-Ordered Subpoenas (later withdrawn).

This policy of recalcitrance is not new. Ten years ago, promptly after the DMCA became effective, Verizon Internet Services reneged on its end of the DMCA bargain by refusing to reveal the identities of infringing customers and then parsing the Copyright Act subpoena provision into a nullity in order to avoid any future compliance. Verizon argued for the first time in *In re Verizon Internet Servs,* that service providers like Verizon were not amenable to Copyright Act subpoenas unless the infringing material was stored on Verizon's own *servers*. This argument directly contradicted the express language of the statute, which is not restricted only to servers, but carefully includes the disjunctive phrase "*or networks*."[6] The trial court strongly disagreed with "Verizon's strained reading of the Act" and upheld the black letter of the

---

[4] *In re Verizon Internet Servs.*, 240 F. Supp. 2d 24, 37 (D.D.C. 2003) ("*Verizon I*").
[6] *Id.*

provision, applying it to both servers *and networks.*[7] The Court stated, "If, as Verizon contends, service providers only have such obligations when the infringing material is stored on their systems, then service providers [] would receive the liability protections of the Act without the corresponding obligation to assist copyright owners in identifying infringers."[8] The court went further by explaining that Verizon's reasoning was completely contrary to the purpose of the DMCA, "There is no logical connection between the line Verizon seeks to draw and the objectives Congress sought to achieve through the DMCA. Verizon's reading would thus undermine the balance Congress established in the DMCA, and does not comport with the Act's purpose and history."[9]

As for Verizon's suggestion that copyright holders file federal lawsuits instead of employing the Copyright Act subpoena provision, the court countered thusly,

> "…there is absolutely nothing in the DMCA or its history to indicate that Congress contemplated copyright owners utilizing John Doe actions in federal court to obtain the identity of apparent infringers, rather than employing the subsection (h) process specifically designed by Congress to address that need. Moreover, as Verizon concedes, the burden on service providers is certainly no greater with a DMCA subpoena than with a Rule 45 third-party subpoena."

After the district court penned this comprehensive and illuminating opinion reinforcing the black letter of the DMCA—an opinion which is still cited by courts here in the Fifth Circuit[10]—Verizon filed an appeal and found a sympathetic ear with the DC Circuit Court, which ultimately overturned the ruling of the district court and entirely capsized the balance between

---

[7] *Id.*
[8] *Id.* at 38
[9] *Id.*
[10] *People Pictures v. Thobe, et. al.*, Case No. 2:11-cv-00297 (E.D. Tex.) (Folsom, D.); *Funimation Ent. v. Does 1 - 1,427*, Case No. 2:11-cv-00269 (E.D. Tex.) (Folsom, D.)

4

copyright holders and communications companies.[11] Following this decision, all major internet service providers in the United States ceased complying with Copyright Act subpoenas,[12] despite their original agreement with copyright holders. With no reasonable means in place to confront copyright infringers after this ruling, entertainment companies helplessly watched unlawful filesharing increase dramatically over the next year[13]—in parallel increase with the customer bases of Verizon and other internet service providers. As one industry journalist boldly pointed out, "While analysts, ISPs and executives deny or ignore it -- ISPs built their broadband empires on the shoulders of piracy and the allure of free content (remember a little thing called Napster?)"[14]

## II. DISCOVERY REQUIRED IN THE INSTANT CASE

For Plaintiff to seek redress for the infringement committed, it must know the identities of the wrongdoers who unlawfully reproduced and unlawfully distributed its film. To discover these identities, Plaintiff must first identify the account holders through whose accounts the infringement took place. This requires Plaintiff to know the account holder's IP address. An IP address is like an automobile's license plate number in that an IP address identifies the "owner" of an internet account just as a license plate number identifies the registered owner of an automobile. If an unidentified person is involved in a tort or crime while driving, and leaves the scene, then investigators will invariably look up the registered owner of the vehicle by the vehicle's license plate, and can then seek to identify the unknown driver. Obviously, the driver

---

[11] *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs.*, 351 F.3d 1229 (D.C. Cir.) ("*Verizon II*")
[12] ISPs in this jurisdiction are no exception, despite this Court having admonished that it "is not bound to follow the precedent of *RIAA v. Verizon*." *Garrett v. Comcast Communs., Inc.*, CA. No. 3:04-cv-693-P (N.D. Tex.) (Solis, J.).
[13] Dan Simmons, *The Rise and Rise of File-Sharing*, BBC News, December 10, 2004, *available at*: http://news.bbc.co.uk/2/hi/programmes/click_online/4085719.stm
[14] Karl Bode, *Verizon Now Kicking P2P Users Off Their Network? Verizon says yes to CNET, then tells us no...*, Broadband DSLReports.com, January 20, 2010, *available at* http://www.dslreports.com/shownews/Verizon-Now-Kicking-P2P-Users-Off-Their-Network-106516

and the registered owner of a vehicle are often the same person.

Vehicle registrations are maintained by state governments and are subject to disclosure for any number of reasons. IP addresses and their associated account holders, on the other hand, are exclusively maintained by private companies and are rarely disclosed without a warrant or court order. Here, Plaintiff already has the IP addresses of the accounts by which the infringement occurred. Plaintiff simply needs to know the identities of the customers associated with the offending accounts.

### a. Why Joinder is in the Court's Best Interest and The Interests of Justice

Because of internet service providers' refusal to comply with 17 U.S.C. § 512(h), federal courts are once again burdened with John Doe lawsuits such as this one. Evidence that this is a major burden on the courts was witnessed in the Dallas Division of the Northern District of Texas when over a dozen BitTorrent cases there were simultaneously consolidated to the docket of a single judge, Judge Royal Furgeson, who promptly reversed three of his own orders granting discovery along with similar discovery orders granted by six fellow judges, then severed all defendants.[16] In a similar filesharing case in the Fort Worth Division, Judge John McBryde also initially granted, but later withdrew discovery.[17]

---

[16] *See Lucas Entm't, Inc v. Does 1-65,* No. 3:31-cv-1407-F (N.D. Tex. July 17, 2010); *Lucas Entm't Inc. v. Does 1-185*, No. 3:10-cv-1537-F (N.D. Tex. Aug. 9, 2010); *VCX Ltd. Inc. v. Does 1-113,* No. 3:10-cv-1702-F (N.D. Tex. Aug. 27, 2010); *LFP Internet Group LLC v. Does 1-635*, No. 3:10-cv-1863-F (N.D. Tex. Sept. 17, 2010); *Mick Haig Production, e.K. v. Does 1-670,* No. 3:10-cv-1900-N (N.D. Tex. Sept. 21, 2010); *LFP Internet Group LLC v. Does 1-319,* No. 3:10-cv-2094-F (N.D. Tex. Oct. 15, 2010); *LFP Internet Group LLC v. Does 1-3,120,* No. 3:10-cv-2095-F (N.D. Tex. Oct 17, 2010); *LFP Internet Group LLC v. Does 1-1,106* No. 3:10-cv-2096-F (N.D. Tex. Oct 18, 2010); *LFP Internet Group LLC v. Does 1-2,619,* No. 3:10-cv-2139-F (N.D. Tex. Oct 22, 2010); *Harmony Films Ltd. V. Does 1-739,* No. 3:10-cv-2412-F (N.D. Tex. Nov. 25, 2010); *Adult Source Media v. Does 1-247,* No. 3:10-cv-2605-F (N.D. Tex. Dec. 21, 2010); *D&E Media, LLC v. Does 1-258,* No. 3:11-cv-00001-F (N.D. Tex. Jan 2, 2011); *Serious Bidness, LLC v. Does 1-109,* No. 3:11-cv-00002-F (N.D. Tex. Jan. 2, 2011); *Steve Hardeman, LLC v. Does 1-168,* No. 3:11-cv-00056-F (N.D. Tex. Jan 10, 2011); *Justin Slayer Int'l, Inc v. Does 1-1,254,* No. 3:11-cv-00101-P (N.D. Tex. Jan. 17, 2011); *Funimation Entm't v. Does 1-1,337,* No. 3:11-cv-00147-F (N.D. Tex. Jan. 24, 2011). . .

[17] *See* Well Go USA, Inc. v. Unknown Participants In Filesharing Swarm Identified by Hash:

The reversals in Dallas were based on a series of rulings in BitTorrent cases in West Virginia in which the defendants actually were misjoined. Although every defendant in the West Virginia cases used BitTorrent to infringe a specific copyrighted film, the defendants did not all participate in the same BitTorrent 'swarm', and therefore could not be said to have collectively participated in the same series of transactions or occurrences as required for joinder under Rule 20. The defendants in each of the Dallas cases were in fact in the same swarm, but Plaintiff's failure to explain this in detail led to the Northern District's unfitting comparison.

The Supreme Court has stated that the term "transaction" as used in the Federal Rules "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. Accordingly, all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence."[18]

The infringing distributions observed in this lawsuit were exclusively made to and from co-participants in a single BitTorrent swarm. Even though the Defendants were not all engaged with the swarm at the exact same time, they did each obtain pieces of Plaintiff's film through the same swarm from persons who, in turn, obtained those pieces from other persons in the swarm, usually at very near points in time. These events are logically as well as directly related.

At a minimum, Defendants' acts come within the scope of a "*series* of transactions or occurrences;"[19] which is all that subsection (a)(2)(A) of Rule 20 requires. The second prong of the requirement for permissive joinder of defendants is that "any question of law or fact common

---

B7FEC872874D0CC9B1372ECE-5ED07AD7420A3BBB
[18] *Moore v. New York Cotton Exchange*, 270 U.S. 593 (U.S. 1926)
[19] Fed. R. Civ. P. 20(a)(2)(A) (emphasis added)

to all defendants will arise in the action."[20] Here, there are common questions of both law and fact that will arise in the action: Defendants' nearly identical actions to reproduce/distribute Plaintiff's film and whether such acts infringed Plaintiff's copyrights.

On a final note about joinder, the Court should be aware of the issues of judicial economy at stake. For a BitTorrent case in a populous region like Houston, Texas, permitting Plaintiff to join the defendants means the difference between one lawsuit and one hundred separate lawsuits. The filing of one hundred separate lawsuits merely to contact a group of infringers is entirely unnecessary. As this Court has previously stated, "the central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits."[21]

b. **Discovery under the Copyright Act**

If the Court issues an Order compelling the relevant internet service providers to comply with the subpoena provision of the Copyright Act, Plaintiff will serve said subpoenas and dismiss this suit altogether. Under the Copyright Act subpoena provision, joinder is a non-issue. The service providers subject to the subpoenas are all acting in the capacity of a service provider described in the Copyright Act at 17 U.S.C. § 512(c). Specifically, each holds infringing material "…that resides on a system *or network* controlled or operated by or for the service provider…"[22] (emphasis added). The term "network" is not superfluous; its meaning is distinct and its inclusion is intentional. Though the term is not defined in the Copyright Act or in Black's Law Dictionary, it is defined by the most widely used English lexicon in the United States: Merriam-Webster's Dictionary. There, the term *network* is defined as a collection of "computers,

---

[20] Fed. R. Civ. P. 20(a)(2)(B)
[21] *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563 (S.D. Tex. 2005) (citing *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000))
[22] 17 U.S.C. § 512(c)(1)

peripherals, terminals, and databases connected by communications lines."[23]

Therefore, by definition, any device described above that is connected to an internet service provider's communications lines is a part of that service provider's network. This includes the devices in customers' homes—which are the specific points on the network where the infringing material resides. Without computers connected to their communications lines, service providers would not have *networks* at all; they would merely have miles of inert wires lying idly in the ground.

    c. **Discovery under Rule 45**

If the Court does not wish to compel discovery per the specific terms of the Copyright Act, Plaintiff instead requests permission to serve a Rule 45 subpoena on these service providers for the same purpose: to obtain the true name, address, telephone number and e-mail address of each subscriber associated with the corresponding IP address by which the infringement occurred. Just as required in the Copyright Act, Plaintiff will stipulate to only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot pursue its lawsuit to protect its film from ongoing and repeated infringement. Additionally, this information is very easily obtainable by the nonparty service providers. Larger, more sophisticated service providers, such as Verizon, have even automated this lookup process and used it for years to notify subscribers of infringement complaints within a mere 24 hours of Verizon receiving the complaint. *See* Exhibit B, Verizon Infringement Notice with receipt/notification timestamps highlighted.

Federal district courts throughout the country, including every district in Texas, have issued orders authorizing discovery in lawsuits similar to this one. At least seven such orders

---

[23] network, Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/network

have been issued in this District.[25] If the Court grants discovery under Rule 45 Plaintiff will serve necessary subpoenas requesting the identifying information in a timely manner. If a service provider cannot identify one or more of the subscribers but does identify an intermediary provider as the entity providing internet access to the responsible subscriber, Plaintiff will then serve a subpoena on that provider requesting the identifying information for the relevant subscriber within a reasonable timeframe. In either case, these service providers will be able to notify their subscribers that this information is being sought, and each subscriber will have the opportunity to raise any objections before this Court prior to the return date of the subpoena. Thus, to the extent that any subscriber wishes to object, he or she will be able to do so.

Courts consider the following factors when granting motions for discovery to identify anonymous internet users: (1) whether the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) all previous steps taken by the plaintiff to identify the Doe Defendant; and (3) whether the plaintiff's suit could withstand a motion to dismiss.[26] Plaintiff here is able to demonstrate each one of these factors.

First, Plaintiff has identified the defendants as closely as possible through the unique IP address of the internet account each defendant used at the time of the unauthorized distribution

---

[25] *Sunlust Pictures, LLC v. Does 1-75*, Case No. 4:12-cv-00695 (S.D. Tex) (Ellison, K.); *AF Holdings LLC v. Does 1 - 119*, Case No. 4:11-cv-03042 (S.D. Tex.) (Hittner, D.); *Boy Racer Inc. v. Does 1 - 36*, Case No. 4:11-cv-03033 (S.D. Tex.) (Lake, S.); *Combat Zone Corp v. Does 1-158,* Case No. 4:12-cv-00773 (S.D. Tex.) (Lake, S.); *First Time Videos, LLC v. Does 1 - 114*, Case No. 4:11-cv-03041 (S.D. Tex.) (Harmon, M.); *Hard Drive Productions, Inc. v. Does 1 - 62*, Case No. 4:11-cv-03036 (S.D. Tex.) (Miller, G.); *West Coast Productions, Inc. v. Does 1-351,* Case No. 4:12-cv-00504 (S.D. Tex.) (Atlas, N.)

[26] *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999); *see also Rocker Mgmt. LLC v. John Does*, No. 03-MC-33 2003 WL 22149380, *1-2, (N.D. Cal. 2003) (applying *Seescandy.com* standard to identify persons who posted libelous statements on Yahoo! message board; denying request for discovery where the postings in question were not libelous)

of the copyrighted film.²⁷ These persons gained access to the internet through connections provided by the listed service providers. Only said service providers can identify the persons responsible for the internet accounts at issue. They do this by matching listed IP addresses with subscriber accounts found in their internal activity logs. Thus, Plaintiff can show that all of the internet subscribers or persons accessing their accounts are "real persons," the former of whose names are known to the service provider and who can be sued in federal court.

Second, Plaintiff has specifically identified the steps taken to identify the defendants' true identities. Plaintiff has obtained each subscriber's IP address and the date and time of the infringing activities that occurred via the subscribers' accounts and has traced each IP address to specific service providers.²⁸ Therefore, Plaintiff has obtained all the information it possibly can without discovery from the service providers.

Third, Plaintiff has asserted a prima facie claim for direct copyright infringement in its Complaint that can withstand a motion to dismiss. Specifically, Plaintiff has alleged that: (a) it is the copyright owner of the work in question, and (b) the defendants reproduced and/or distributed the copyrighted work without Plaintiff's authorization using the internet subscriber accounts described by the listed IP addresses.²⁹ These allegations state a claim for copyright infringement.³⁰

---

²⁷ *See Seescandy.com*, 185 F.R.D. at 578-80; *see also* Exhibit C Declaration of Scott Armstrong
²⁸ *Id*.
²⁹ *See Complaint.*
³⁰ See 17 U.S.C. §106(1)(3); *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003), cert. denied, 124 S. Ct. 1069 (U.S. Jan. 12, 2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music. If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright."); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014-15 (9th Cir. 2001) ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights. Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights.")

## III. **PRAYER**

Because Plaintiff is completely unable to redress the massive infringement of its copyrights through BitTorrent without discovery of this privately held information, and because any joinder defects that may have given Northern District courts pause in this context have been resolved in Plaintiff's present complaint, Plaintiff respectfully requests that this Court grant this Motion for Leave to Identify Defendants and issues an Order either 1) compelling the relevant internet service providers to comply with the Copyright Act subpoena provision as it relates to this action, or 2) granting Plaintiff leave to serve Rule 45 subpoenas prior to a Rule 26(f) discovery conference and requiring the relevant internet service providers to produce the records requested in Plaintiff's narrowly-tailored subpoenas. Affected service providers are listed in Exhibit A.

Respectfully Submitted,

s/ *E. F. Stone*
Evan Stone
Texas Bar No. 24072371
624 W. University Dr., #386
Denton, Texas 76201
Phone: 469-248-5238
Fax: 310-756-1201
E-mail: lawoffice@wolfe-stone.com

**CERTIFICATE OF SERVICE**

Because neither the identities nor the contact information of the John Defendants are known at this time, service could not be made on said Defendants.

*E. F. Stone*